[No. 9157–1–III.   Division Three.   February 16, 1989.]

PACESETTER REAL ESTATE, INC., ET AL, *Respondents*, v.
J. STANLEY FASULES, ET AL, *Appellants*.

*Leo Driscoll* and *Winston & Cashatt,* for appellants.

*Robert Walker,* for respondents.

MUNSON, J.—J. Stanley Fasules appeals from the judgment that determines two loans made to Pacesetter Real Estate, Inc., were usurious. He contends the court erred in (1) failing to dismiss the action for lack of standing as to Pacesetter and the Fullers; (2) finding the $40,000 and $12,000 loans were "primarily for consumer purposes" and not "primarily for commercial, investment, or business purposes"; and (3) awarding attorney fees to the Fullers only and denying them to Mr. Fasules, despite contractual provisions allowing such fees. We reverse.

Pacesetter is a closely held corporation in which Brian and Sandra Fuller are sole shareholders, officers, and directors. The Fullers incorporated Pacesetter in 1980, purportedly to engage in the real estate business. Mr. Fuller has been in that business for 17 years and is licensed as a real estate broker in both Idaho and Washington.

In 1985, Pacesetter entered into a contract to purchase 113 acres of land in Stevens County, Washington, for $138,000. It decided to build a combined real estate office and residence and to farm the land. The $8,000 down payment was made with corporate funds, leaving a balance due of $130,000 plus interest. Thereafter, the Fullers contacted Rick Van Gelder of Equity Mortgage Services, Inc., who subsequently arranged a $40,000 loan to Pacesetter from Clyde R. Ross. The loan was evidenced by a promissory note dated November 27, 1985, secured by a deed of trust on 14 acres of the 113–acre tract. The note bore an annual interest rate of 18 percent and contained the following

language on its face: "This is acknowledged to be a commercial loan." A $3,600 broker's commission was paid to Equity Mortgage from the $40,000 loan. Of the remaining proceeds, less attorney fees and closing costs, a portion was paid to obtain a deed to the 2½ acres upon which the office–residence structure was being constructed. The Fullers signed the note in their corporate capacity as president and vice–president but not in their individual capacity.

Additional funds were needed to complete the structure. The Fullers engaged Nelson Realty to find a lender for an additional loan; Mr. Fasules was contacted. Mr. Fasules personally evaluated the property and found the office portion of the structure incomplete but being used; the residential portion was vacant and unlivable. Mr. Fasules was aware Pacesetter owned the property. A $12,000 promissory note dated May 6, 1986, was initially executed by the Fullers in their corporate capacity on behalf of Pacesetter. The note bore an annual interest rate of 16 percent and was secured by a second deed of trust in favor of Mr. Fasules covering the 2½ acres deeded to Pacesetter. Thereafter, Mr. Fasules insisted the Fullers sign the note individually to insure their personal liability. A $1,200 broker fee was paid to Nelson Realty from the gross proceeds of the loan; the remaining net proceeds, less attorney fees and other minor charges, were used exclusively to complete the structure. On December 4, 1986, Mr. Fasules obtained an assignment from Mr. Ross of the $40,000 note.

The Fullers occupied the residential portion of the structure as their family residence without a written rental agreement with Pacesetter. The Fullers made no rental payments to Pacesetter. By July 6, 1987, both loans were delinquent. The trustee under the deed of trust gave notice of foreclosure based on delinquencies in payment. Thereafter, Pacesetter filed this action seeking injunctive relief from the nonjudicial foreclosure, a determination that the

$12,000 loan was usurious, and attorney fees.[1] The trial court temporarily restrained the nonjudicial foreclosure proceeding and, following a trial, found both loans to be usurious. It offset the statutory penalties against the principal owning on the respective loans and awarded attorney fees to the Fullers. Mr. Fasules appeals.

First, he contends Pacesetter lacked standing to commence or maintain this action when it, at the initiation of this action, had not complied with the fee requirements of RCW 23A.44.120 which provides:

> Compliance with fee requirements prerequisite to court proceedings. No corporation shall be permitted to commence or maintain any suit, action, or proceeding in any court of this state, without alleging and proving that it has paid or contracted to pay as herein provided all fees and penalties due the state of Washington under existing law or this title.

Finding of fact 1 provides:

> Pacesetter Real Estate, Inc. is a Washington corporation. At the time of the initiation and trial of this matter, said corporation had not paid the fees for its license, and was not current in its licensing and requirements with the State of Washington.

This finding was based on ample evidence. On direct examination by his own counsel, Mr. Fuller was asked what year Pacesetter last paid its license fees; he responded, "I believe it was in '83. I'm not positive. We fell behind because of real estate sales and never did get quite caught up again." This admission in conjunction with the court's unchallenged finding of fact is sufficient to establish Pacesetter's failure to meet the requirements of RCW 23A.44.120, thus stripping it of the right to bring an action.

Pacesetter claims Mr. Fasules' failure to raise the standing issue at trial prohibits him from raising it for the first

---

[1]The complaint alleged usury only as to the $12,000 loan and not the initial $40,000 Ross loan. We consider the latter only because the court considered it in its findings of fact, conclusions of law, and judgment.

time on appeal. *Smith v. Shannon,* 100 Wn.2d 26, 666 P.2d 351 (1983). Such waiver has been recognized where the issue has not been raised by answer or motion. *Portland Ass'n of Credit Men, Inc. v. Earley,* 42 Wn.2d 273, 254 P.2d 758 (1953); *Draper Mach. Works, Inc. v. Hagberg,* 34 Wn. App. 483, 663 P.2d 141 (1983). Here, Mr. Fasules specifically pleaded Pacesetter's lack of standing in his answer and reiterated his position at trial.

▮ The Fullers alternately contend Pacesetter has standing to sue under RCW 23A.28.250.[2] The underlying prerequisite of the statute is the presence of a dissolved corporation. The trial record is silent as to when dissolution occurred. Mr. Fasules, by motion of his appellate counsel, requested this court to accept two certificates from the Secretary of State that reveal Pacesetter was administratively dissolved by the Secretary of State on December 30, 1983.[3] The motion was not opposed; we grant it. RAP 9.10. From December 30, 1983, Pacesetter or any of its creditors had 2 years to initiate an action arising from predissolution transactions. Here, Pacesetter and the Fullers filed this action on September 25, 1987. Not only was this action filed beyond the 2–year limitation period for reinstatement, but it dealt with one loan made subsequent to this period.

While the Legislature expressly provides for administrative dissolution following a corporation's failure to pay annual license fees,[4] and further provides for timely

---

[2]RCW 23A.28.250 provides in part:

"Survival of remedy after dissolution. The dissolution of a corporation either: (1) By the issuance of a certificate of dissolution by the secretary of state, or (2) by a decree of court, or (3) by expiration of its period of duration *shall not take away* or impair any *remedy available* to or *against* such corporation, its directors, officers, or shareholders, for any right or claim existing, or any liability incurred, *prior to such dissolution if* action or other proceeding thereon is commenced *within two years after the date of such dissolution."* (Italics ours.)

[3]Mr. Fasules filed in this court documentation that the Secretary of State had administratively dissolved Pacesetter in 1983, pursuant to RCW 23A.28,125; as of August 3, 1988, it had not been reinstated.

[4]RCW 23A.28.125 provides in part:

reinstatement following such dissolution,[5] it fails to provide direction as to the status of a corporation so dissolved. Early Washington case law, however, holds a corporation's failure to apply for reinstatement within the time permitted results in irrevocable dissolution. *Hawley v. Bonanza Queen Mining Co.*, 61 Wash. 90, 111 P. 1073 (1910); *see also Globe Constr. Co. v. Yost*, 173 Wash. 522, 527, 23 P.2d 892 (1933) (once reinstatement period passes, corporation is "dead"); *Peck v. Linney*, 97 Wash. 103, 114, 165 P. 1080 (1917) (corporation in "dormant condition" cannot sue); *Gamble v. Alder Group Mining & Smelting Co.*, 5 Wn.2d 578, 582, 105 P.2d 811 (1940) (following expiration of reinstatement period, corporation cannot maintain an action). This view is consistent with case law across the country. *See* 16A W. Fletcher, *Corporations* § 8113, p. 358 (1988). Since Pacesetter failed to comply with the 2–year reinstatement period, it lacks standing to bring this action.

Second, Mr. Fasules contends the Fullers lack standing to maintain an action for usury as to the $40,000 Ross loan

---

"(1) A domestic corporation shall be administratively dissolved by the secretary of state upon the conditions prescribed in this section when:

"(a) The corporation has failed to file the annual report required by this title or to pay the annual license fee required by this title, and a period of sixty days has expired since the last day permitted for timely filing or payment, without the corporation having filed or made payment of all required fees and penalties;"

[5]RCW 23A.28.127(1) allows an administratively dissolved corporation to apply to the Secretary of State for reinstatement within 2 years following the effective date of the dissolution. The current 2–year reinstatement period is the last in an extensive history of legislative amendments on the subject. Under the Laws of 1907, ch. 140, § 7, p. 271, the Legislature provided no specific provisions for reinstatement. Rather, a corporation was required to pay its fees within 2 years or its name was stricken from the records. Under the Laws of 1909, 1st Ex. Sess., ch. 19, § 1, p. 57, a corporation was given 6 months to reinstate. Under the Laws of 1911, ch. 41, § 1, p. 135, a corporation could apply for reinstatement at any time. Under the Laws of 1923, ch. 144, § 5, p. 465, a corporation could apply for reinstatement within 3 years of its name being stricken from the records. Under the Laws of 1937, ch. 70, § 14, p. 246, a corporation was allowed a 10–year period to reinstate. Under the Laws of 1965, ch. 53, § 3 *et seq.*, p. 1054, the Washington Business Corporation Act was adopted, which omitted the prior references to postdissolution reinstatement. Not until the Laws of 1983, ch. 32, § 2, p. 285 was the current 2–year reinstatement period adopted.

when they did not sign the note in their individual capacity. It is undisputed that this note was signed by the Fullers only as officers of Pacesetter. Neither signed in an individual capacity. As such, capacity to sue must be based on something other than the face of the instrument.

The Fullers allege their potential personal liability provides a basis for standing under RCW 23A.44.100.[6] Mr. Fasules, in reply, contends the court made no finding that the Fullers were unlawfully assuming to act as a corporation without authority. While his contention is correct, we note the facts are sufficient to find unauthorized assumption of corporate powers, considering the date of Pacesetter's dissolution; its failure to apply for reinstatement; the limited statutory power provided the corporate directors to wind up corporate affairs; the expiration of the reinstatement period; and the Fullers' act of securing corporate loans following dissolution. We find RCW 23A.44-.100 provides a basis for standing to the Fullers.

■ Additionally, the Fullers are provided a basis for standing as trustees of the corporate property. RCW 23A-.28.250 provides in part:

The directors of any such corporation shall hold title to the property of the corporation as trustees for the benefit of its creditors and shareholders. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The shareholders, directors, and officers shall have power to take such corporate or other action as shall be appropriate to protect such remedy, right, or claim.

While arguably the trustee's right to litigate is limited to the 2–year period following corporate dissolution under

---

[6]RCW 23A.44.100 provides:

"Unauthorized assumption of corporate powers—Exception. (1) All persons who assume to act as a corporation without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof.

"(2) Subsection (1) of this section does not apply to any persons assuming to act as a corporation during a period of administrative dissolution if the corporation is subsequently reinstated under the provisions of RCW 23A.28.127 and 23A.28.135."

RCW 23A.28.250 (see footnote 2), we see no reason the directors should lose the position of trustees where title to property remains in the corporate name. Here, the record reflects there is corporate property requiring the care of a trustee. In addition to the land and the structures, Mr. Fuller testified that subsequent to both loans, a barn was built for approximately $20,000, milking equipment purchased for approximately $5,000 to $7,000, and dairy cows purchased for an unspecified amount. The record is silent as to the source of funds used for these purchases and whether they were a corporate or an individual endeavor. Mr. Fuller does reveal, however, that 30 to 40 acres of the corporate property, *i.e.,* from the original 113–acre purchase, were leased for pasture. As such, the Fullers had standing as trustees of the corporate property.

Third, Mr. Fasules contends the loans to Pacesetter were primarily for commercial or business purposes as opposed to personal, family, or household purposes, within the meaning of RCW 19.52.080.[7] This statute provides an exception to the usury defense when the purposes of the loan are "primarily for agricultural, commercial, investment, or business purposes". This exception, however, is inapplicable to consumer transactions, *i.e.,* those "primarily for personal, family, or household purposes." Here, the court in applying the statute determined these two loans were consumer transactions, as they were primarily for the purpose of constructing a single family residence. Mr. Fasules claims this determination was erroneous and asks

---

[7]RCW 19.52.080 provides:

"Defense of usury or maintaining action thereon prohibited if transaction primarily agricultural, commercial, investment, or business—Exception. Profit and nonprofit corporations . . . may not plead the defense of usury nor maintain any action thereon or therefor, and persons may not plead the defense of usury nor maintain any action thereon or therefor if the transaction was primarily for agricultural, commercial, investment, or business purposes: *Provided, however,* That this section shall not apply to a consumer transaction of any amount.

"Consumer transactions, as used in this section, shall mean transactions primarily for personal, family, or household purposes."

this court to review, de novo, the purpose of the loans and the applicability of RCW 19.52.080.

To support de novo review, Mr. Fasules claims the determination of a loan's purpose within the meaning of RCW 19.52.080 is a conclusion of law and/or a mixed question of law and fact. *Fisher v. World–Wide Trophy Outfitters,* 15 Wn. App. 742, 743–44, 551 P.2d 1398 (1976) (determination of whether a particular statute applies to the factual situation is a conclusion of law and not a finding of fact). *Accord, Blake v. Federal Way Cycle Ctr.,* 40 Wn. App. 302, 309, 698 P.2d 578 (whether actions are "unfair" or "deceptive" under the Consumer Protection Act is a question of law), *review denied,* 104 Wn.2d 1005 (1985); *Keyes v. Bollinger,* 31 Wn. App. 286, 289, 640 P.2d 1077 (1982) (whether actions give rise to violation under the Consumer Protection Act is a question of law); *see also Lobdell v. Sugar 'N Spice, Inc.,* 33 Wn. App. 881, 887, 658 P.2d 1267 (whether distributorships constitute "franchises" under the Franchise Investment Protection Act), *review denied,* 99 Wn.2d 1016 (1983).

■■ We agree with Mr. Fasules and examine, de novo as a question of law, whether the loans in question were "primarily" for business or consumer purposes. *Brown v. Giger,* 111 Wn.2d 76, 82, 757 P.2d 523 (1988), decided while this case was on appeal, held in determining a transaction's "purpose" the court will look to the objective purpose rather than a subjective one. The court concurred with *Aetna Fin. Co. v. Darwin,* 38 Wn. App. 921, 691 P.2d 581 (1984), *review denied,* 103 Wn.2d 1019 (1985) in finding a "loan's 'purpose' in the context of RCW 19.52.080 is principally established by the representations the borrower makes to the lender at the time the loan is procured." *Brown,* at 82; *see also National Bank of Commerce v. Thomsen,* 80 Wn.2d 406, 415, 495 P.2d 332 (1972) (usury must be established at the inception of the contract). Here,

the representations by the Fullers on behalf of the corporate owner were that the purpose of the loans were to complete a combined office–residence. This factor alone may be inconclusive.

A more significant statement by *Brown* is the holding that documents themselves are to be given substantial weight: "More conclusive [than the borrower's representations] are the loan documents themselves." *Brown,* at 82. Even though the borrower in *Brown* had not drafted the instruments which described the loans as having a business or commercial purpose, she had "signed them, thereby representing that she sought funding for the purposes stated." *Brown,* at 82 (citing *Conrad v. Smith,* 42 Wn. App. 559, 712 P.2d 866, *review denied,* 105 Wn.2d 1017 (1986)). While the court acknowledged the borrower's predicament, it focused on the importance of upholding the validity of contracts:

> We have stressed before the strength of the commitments that arise from the making of legal contracts, and our reluctance to forgive them when a party has carelessly 'sold the farm.' We must emphasize again the duty of each individual to be vigilant when undertaking contractual obligations.

(Citation omitted.) *Brown,* at 83.

Here, there is ample evidence that the Fullers from the outset intended the loans to be advanced to Pacesetter for construction and completion of a combined corporate real estate office–residence. However, it is also clear that the face of the November 27, 1985, $40,000 promissory note contained the following language in bold type: "This is acknowledged to be a commercial loan." Using the *Brown* rationale, the purpose acknowledged on the instrument provides more conclusive evidence than the representations in isolation. Mr. Fuller's vast experience in real estate likewise would raise the expectations of vigilance in entering into such a contractual obligation.

In considering the "objective purpose," Mr. Fasules' argument that the loan moneys were used exclusively to

improve corporate property is well taken. The initial purchase of the 113 acres, which includes the 2½ acres in question, was made by Pacesetter. Further, a portion of the $40,000 loan was utilized to pay a sufficient amount on the land contract to acquire a deed to the 2½ acres; the record is silent on the issue, but the diverted portion of the original loan for this purpose may or may not have supplied the need for additional funds to complete the residence. The only collateral given for the loan was Pacesetter's real property; the structure was to be built on that property, thus furthering the goal of increasing corporate wealth.

The court in its findings and oral opinion relied heavily upon the nature of the structure, *i.e.*, single family residence and a homeowner's insurance policy naming the Fullers as the insureds, in determining the loan was made primarily for a consumer rather than a business purpose. This focus is misplaced; a corporation has a legitimate business purpose in building its officers a combined home/office on its property.[8] *See* 6A W. Fletcher, *Corporations* § 2794, at 239 (1981) (the tendency of courts is toward holding the acquisition of land or buildings, or both, for use by employees as homes to be within the corporate powers). Mere occupation of the structure as a residence by the Fullers does not in itself obviate the corporate business purpose. As the court's unchallenged finding of fact indicates, the structure was occupied as a family residence "through a nonwritten rental agreement with the corporation." Mr. Fuller testified that he probably should be paying rent to Pacesetter while using the structure as his residence.

One additional factor provides support for a finding of corporate purpose here. Our Supreme Court has recognized

---

[8]We note for tax purposes, a corporation is allowed to deduct depreciation and utilities from a residence used in the corporation's business as a residence for its on–site president/manager/operator. *See J. Grant Farms, Inc. v. Commissioner,* 49 T.C.M. 1197 (1985) (married couple incorporated a farm).

a party's right to rely on representations made in the contract setting based on a general duty to contract in good faith. *Liebergesell v. Evans,* 93 Wn.2d 881, 889, 613 P.2d 1170 (1980); *see also Kammerer v. Western Gear Corp.,* 27 Wn. App. 512, 618 P.2d 1330 (1980), *aff'd,* 96 Wn.2d 416, 635 P.2d 708 (1981); *Puget Sound Serv. Corp. v. Dalarna Mgt. Corp.,* 51 Wn. App. 209, 213, 752 P.2d 1353, *review denied,* 111 Wn.2d 1007 (1988). Here, the Fullers' representations of Pacesetter's existing corporate status, supported by their use of a portion of the $40,000 loan to secure a deed to the 2½ acres upon which the structure is located, provide a legitimate basis for reliance. Based on this factor, as well as the ones noted above, we find a business or investment purpose, at least insofar as the $40,000 loan.

In regard to the $12,000 loan, the evidence is less compelling. Unlike the earlier promissory note, the May 6, 1986, note does not contain a purpose clause. It does, however, contain signatures by the Fullers initially in their corporate capacity. By signing the note in their individual capacity, the Fullers changed their legal status to personal guarantors of the corporate debt. *See generally Lincoln v. Transamerica Inv. Corp.,* 89 Wn.2d 571, 573 P.2d 1316 (1978); *Topline Equip., Inc. v. Stan Witty Land, Inc.,* 31 Wn. App. 86, 639 P.2d 825, *review denied,* 97 Wn.2d 1015 (1982). Requiring these individual guaranties is a common practice of lenders when dealing with a closely held corporation. This fact in conjunction with the above noted evidence as to the use of the money for the economic improvement of Pacesetter's assets helps establish Mr. Fasules' contention of a business or investment purpose.

The Fullers urged the trial court and this court to pierce the corporate veil to find the transactions were primarily for consumer purposes. To support this position, the

Fullers point to the closely held format of the company, the mixing of accounts, and the use of the primary portion of the corporate structure for a single family residence. Mr. Fasules responds that the "reverse use" of the doctrine applies only in limited situations:

As a general rule, the separate identity of a corporation distinct from its stockholders will be honored unless its recognition serves to perpetuate some form of injustice which typically involves a fraud, misrepresentation, or manipulation of the corporation to a creditor's detriment.

*Roderick Timber Co. v. Willapa Harbor Cedar Prods., Inc.,* 29 Wn. App. 311, 315, 627 P.2d 1352 (citing *Truckweld Equip. Co. v. Olson,* 26 Wn. App. 638, 618 P.2d 1017 (1980)), *review denied,* 96 Wn.2d 1003 (1981). The party asserting such a position would have the burden of proof. Here, the trial court made no finding of fact disregarding the corporate entity. Rather, in its finding of fact 1, it held that Pacesetter at the initiation of this action was not a "current" Washington corporation, yet granted relief to both the corporation and the Fullers. This contradicts the argument that the court deemed Pacesetter the alter ego of the shareholders. If no finding is entered as to a material issue, it is deemed to have been found against the party having the burden of proof. *Omni Group, Inc. v. Seattle-First Nat'l Bank,* 32 Wn. App. 22, 28, 645 P.2d 727, *review denied,* 97 Wn.2d 1036 (1982). We find the Fullers have not met their burden of establishing Pacesetter was merely an alter ego of its shareholders or, if so, that a manipulation to the creditor's detriment is being attempted.

Fourth, Mr. Fasules contends the trial court erred in awarding attorney fees to the Fullers and denying fees to himself. We agree.

The judgment is reversed and the matter is remanded for further proceedings and for the determination of the

amount of attorney fees to be awarded to Mr. Fasules both at trial and on appeal.

THOMPSON, C.J., and RIPPLE, J. Pro Tem., concur.

After modification, further reconsideration denied March 9, 1989.