[Nos. 56879-5-I; 56970-8-I.   Division One.   June 18, 2007.]

MAPLE COURT SEATTLE CONDOMINIUM ASSOCIATION, *Plaintiff*, v. ROOSEVELT, LLC, ET AL., *Appellants*, ALL METAL FABRICATORS, INC., ET AL., *Defendants*, GRATEFUL SIDING, INC., ET AL., *Respondents*, RIMBEY METALS, INC., *Defendant*, ORLIN JOHNSON ET AL., *Respondents*, BAY PLUMBING & HEATING, LTD., ET AL., *Defendants*, GASLINE MECHANICAL, INC., *Respondent*.

258

*John P. Hayes* and *Viivi Vanderslice* (of *Forsberg & Umlauf*), for appellants.

*Robert K. Goff* and *Daniel J. DeWalt* (of *Goff & DeWalt, LLP*); *Richard S. Fallon*; *John E. Zehnder, Jr.*, and *Anthony R. Scisciani III* (of *Scheer & Zehnder, LLP*); *Mark E. Mills* and *Susan K. Fuller* (of *Law Offices of William D. Garcia*); *Eileen I. McKillop* (of *Oles Morrison Rinker & Baker, LLP*); *Douglas A. Hofmann* and *Margaret A. Sundberg* (of *Williams Kastner & Gibbs, PLLC*); *David B. Jensen, Mark G. Honeywell*, and *Michelle Menely* (of *Gordon Thomas Honeywell Malanca Peterson & Daheim, LLP*); and *William S. Clement* and *John E. Drotz* (of *Clement & Drotz*), for respondents.

*Bryan P. Harnetiaux* on behalf of Washington State Trial Lawyers Association Foundation, amicus curiae.

*Leonard D. Flanagan* and *Daniel S. Houser* on behalf of Emily Lane Homeowners Association, amicus curiae.

*Paul H. Beattie, Jr., and Ellen Conedera Dial* on behalf of Washington State Bar Association, amicus curiae.

¶1   GROSSE, J. — Administratively dissolved and cancelled limited liability companies are no longer legal entities and have no standing to prosecute a claim. Hence, Roosevelt, LLC, and Steinvall Construction, Inc.'s suit against third party subcontractors to recover sums the companies paid to settle a suit with a homeowners association for construction defects was properly dismissed. The judgment of the trial court is affirmed.[1]

---

[1] This court has before it three cases dealing with limited liability companies and their capacity to sue or be sued under chapter 25.15 RCW. After oral argument was set in this case, the Supreme Court issued its decision in *Ballard Square Condominium Owners Ass'n v. Dynasty Construction Co.*, 158 Wn.2d 603, 146 P.3d 914 (2006). This court asked for supplemental briefing from the parties on whether a

## FACTS

¶2 This is an action by a dissolved and cancelled company, Roosevelt, and its third party defendant/cross claimant, Steinvall, to recover monies expended in settling a suit against a homeowners association from subcontractors who worked on the condominiums. Roosevelt, the condominium developer, contracted with Steinvall to act as the construction manager for the project. All contracts with the subcontractors were signed by Roosevelt. Steinvall did not sign any contracts other than the one it had with Roosevelt.

¶3 Roosevelt, a limited liability company (LLC) formed to construct Maple Court condominiums, was administratively dissolved on September 23, 2002, and was cancelled by the secretary of state on September 23, 2004. On December 3, 2003, nine months before Roosevelt was cancelled, the homeowners association filed a complaint. Two months before the secretary cancelled Roosevelt, Roosevelt filed a third party complaint against Steinvall and the subcontractors. On March 16, 2005, six months after Roosevelt's certificate of formation was cancelled, Roosevelt and Steinvall settled with the homeowners association. Thereafter, Roosevelt and Steinvall sought to recover the settlement amounts from various subcontractors.

## ANALYSIS

■ ¶4 An LLC is formed when a certificate of formation is filed with the secretary of state.[2] Although a company can be dissolved in several ways, only administrative dissolution is relevant here.[3] The secretary can administratively

---

similar 2006 amendment to the Washington Limited Liability Company Act, chapter 25.15 RCW, applied to this case. This court stayed its decision in this matter pending this court's decision in *Chadwick Farms Owners Ass'n v. FHC, LLC*, 139 Wn. App. 300, 160 P.3d 1061 (2007) and the companion case *Emily Lane Homeowners Ass'n v. Colonial Development, LLC*, 139 Wn. App. 315, 160 P.3d 1073 (2007). The decisions in *Chadwick* and *Emily Lane* will be filed contemporaneously with this decision.

[2] RCW 25.15.070(1).

[3] RCW 25.15.270.

dissolve an LLC if the company fails to pay its license fees or fails to file the required annual reports.[4] Once the secretary gives notice that administrative dissolution is pending, the company has 60 days to correct the grounds for dissolution, and, if it fails to do so, the company is dissolved.[5] An administrative dissolution allows the LLC to continue but to carry on only whatever business is necessary to wind up or liquidate its business and affairs. If the company does not apply for reinstatement within two years of the administrative dissolution, the secretary of state "shall" cancel the certificate of formation.[6] Once the certificate is cancelled, an LLC is no longer a separate legal entity.[7]

■ ¶5 The statute mandates that an administratively dissolved company wind up its affairs within two years.[8] Failure to reinstate a dissolved corporation within the permitted time frame results in a lack of standing to bring an action.[9] Roosevelt failed to reinstate itself within the two years. Thus it had no standing to pursue a claim against the subcontractors after September 23, 2004.

---

[4] RCW 25.15.280.

[5] RCW 25.15.285(2).

[6] RCW 25.15.290(4) provides:

If an application for reinstatement is not made within the two-year period set forth in subsection (1) of this section, or if the application made within this period is not granted, the secretary of state *shall cancel* the limited liability company's certificate of formation.

(Emphasis added.)

[7] RCW 25.15.070(2)(c) provides:

A limited liability company formed under this chapter shall be a separate legal entity, the existence of which as a separate legal entity shall continue until cancellation of the limited liability company's certificate of formation.

[8] RCW 25.15.270(6) provides:

A limited liability company is dissolved and its affairs shall be wound up upon the first to occur of the following:

. . . .

(6) The expiration of two years after the effective date of dissolution under RCW 25.15.285 without the reinstatement of the limited liability company.

[9] *Pacesetter Real Estate, Inc. v. Fasules*, 53 Wn. App. 463, 767 P.2d 961 (1989).

¶6 LLCs are hybrids of both business corporations and partnerships. Dissolved business corporations are prohibited from affirmatively maintaining an action.[10] The language of the Washington Limited Liability Company Act (LLCA), chapter 25.15 RCW, is clear. Once cancelled, Roosevelt was no longer a legal entity. As such, it could not maintain a cause of action against the subcontractors.

¶7 Roosevelt argues that it is still able to wind up its affairs even though it is a cancelled company. Roosevelt further argues that cancelled only precludes reinstatement but does not affect its ability to continue to wind up its affairs. Winding up, Roosevelt contends, is only completed when the company itself certifies that it is complete by filing a certificate of cancellation. For this proposition, Roosevelt relies upon RCW 25.15.295, which provides:

(1) Unless otherwise provided in a limited liability company agreement, a manager who has not wrongfully dissolved a limited liability company or, if none, the members or a person approved by the members or, if there is more than one class or group of members, then by each class or group of members, in either case, by members contributing, or required to contribute, more than fifty percent of the agreed value (as stated in the records of the limited liability company required to be kept pursuant to RCW 25.15.135) of the contributions made, or required to be made, by all members, or by the members in

---

[10] *See Follett v. Clark*, 19 Wn.2d 518, 521, 143 P.2d 536 (1943) ("[A] corporation so dissolved by the secretary of state for nonpayment of annual license fees may be sued during the period that it may be reinstated . . . . But a corporation in such plight cannot affirmatively maintain an action." (citation omitted)); *see also Pacesetter*, 53 Wn. App. 463 (holding that failure to reinstate a dissolved corporation within the permitted time frame results in a lack of standing to bring an action); *Inducon Corp. v. Crowley Mar. Corp.*, 53 Wn. App. 872, 873, 771 P.2d 356 (1989) (a corporation's failure to pay its license fees resulted in its administrative dissolution, which barred it from maintaining an action in court). In *Gamble v. Alder Group Mining & Smelting Co.*, 5 Wn.2d 578, 582, 105 P.2d 811 (1940), the court held (under then applicable Washington law):

The corporation, even though not dissolved, could not be reinstated under the provisions of § 14 of the statute above referred to, and it had, in effect, become dead, as has been indicated in *Globe Const. Co. v. Yost*, 173 Wash. 522, 23 P.2d 892 [(1933)]. So long as it had the right to have its name restored to the rolls of the secretary of state's office by paying its delinquent fees, it was subject to process and suit, but it could not affirmatively maintain an action. *Nat'l Grocery Co. v. Kotzebue Fur & Trading Co.*, 3 Wn.2d 288, 100 P.2d 408 [(1940)].

each class or group, as appropriate, may wind up the limited liability company's affairs. The superior courts, upon cause shown, may wind up the limited liability company's affairs upon application of any member or manager, his or her legal representative or assignee, and in connection therewith, may appoint a receiver.

(2) Upon dissolution of a limited liability company *and until the filing of a certificate of cancellation* as provided in RCW 25.15.080, the persons winding up the limited liability company's affairs may, in the name of, and for and on behalf of, the limited liability company, prosecute and defend suits, whether civil, criminal, or administrative, gradually settle and close the limited liability company's business, dispose of and convey the limited liability company's property, discharge or make reasonable provision for the limited liability company's liabilities, and distribute to the members any remaining assets of the limited liability company.

(Emphasis added.) In order to adopt Roosevelt's position, we would have to ignore the plain language of the statute requiring that winding up an administratively dissolved company be completed within two years.[11] Roosevelt's argument renders the secretary of state's cancellation of a company meaningless. Statutes that are in derogation of common law are strictly construed.[12] The language is sufficiently clear that the statute prohibits Roosevelt from maintaining a cause of action against others once it is no longer a legal entity.

¶8 Roosevelt was not without recourse. At any time within two years of the effective date of the dissolution, Roosevelt could have applied for reinstatement.[13] Reinstatement relates back to the effective date of the administrative dissolution. Upon reinstatement, the LLC can con-

[11] RCW 25.15.270(6).

[12] *Matthews v. Elk Pioneer Days,* 64 Wn. App. 433, 437, 824 P.2d 541, *review denied,* 119 Wn.2d 1011 (1992).

[13] RCW 25.15.290(1).

tinue on as though the dissolution had not occurred.[14] Even though Roosevelt knew it had claims against it, Roosevelt failed to act.

*Steinvall's Claim against the Subcontractors*

■ ¶9 Steinvall was one of multiple third party defendants named in Roosevelt's third party complaint. The homeowners association did not name Steinvall in the suit, nor did it directly file a claim against Steinvall. The only claims against Steinvall in this case were those made by Roosevelt. As outlined above, Roosevelt was no longer a legal entity and could not prosecute claims. Roosevelt had no valid claims against Steinvall. Since Steinvall's claims are derivative, it also has no valid claim.

■ ■ ¶10 Steinvall argues that it can recover from the subcontractors under the contractual indemnity clause contained in its contract with Roosevelt. Steinvall and each of the subcontractors had the following indemnity clause in their contracts with Roosevelt:

> *The Subcontractor shall indemnify* and hold harmless the Owner, the *Construction Manager*, the Architect-Engineer and all of their agents and employees *from and against all claims*, damages, losses, and expenses including attorney's fees arising out of or *resulting from the performance of the Work*, provided that any such claim, damage loss or expense (a) is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom, and (b) is caused in whole or in part by any negligent act or omission of the Subcontractor . . . or *anyone for whose acts it may be liable*, regardless of whether it is caused in part by a party indemnified hereunder. . . .[15]

Steinvall served as the construction manager during the construction of the condominiums. After Roosevelt filed against Steinvall and the other subcontractors, Steinvall filed a cross claim against the third party defendants on

---

[14] RCW 25.15.290(3).

[15] (Emphasis added.)

December 14, 2004. None of this matters, however, because the homeowners association never filed a claim against Steinvall. Thus, any settlement that Steinvall made was on behalf of Roosevelt and was gratuitous since Roosevelt was not a legal entity and could not pursue a claim against Steinvall.[16] Since Roosevelt could not maintain an action against Steinvall, there was no duty for Steinvall to pay Roosevelt. Since Steinvall had no duty to pay Roosevelt, none of the subcontractors had a duty to pay Steinvall.

¶11 Steinvall's payment to Roosevelt for its share of the settlement is nothing more than a volunteer payment. "It hardly needs citation of authority in support of the general rule that a mere volunteer in the payment of such a claim cannot successfully maintain an action against another, claimed by such volunteer to be the one liable for the payment thereof."[17] The decision in *State ex rel. Macri v. City of Bremerton*[18] cites with approval the *Washington Tire*[19] case and states:

> In any event, however, appellant's covenant to indemnify and hold harmless the city against any and all claims for damages must be construed to have reference to damages arising from legal liability, and in so far as the city acted as a mere volunteer in paying [another], it may not look to appellant for indemnity. [*Wash. Tire*, 126 Wash. 565].

Steinvall additionally argues that the settlement was a reasonable one and should be upheld. Steinvall further

---

[16] The legislature enacted an amendment in 2006 providing for a three-year period in which a party can bring an action against a dissolved LLC and the LLC may defend in its own name. Prior to June 7, 2006, administratively dissolved companies had two years within which to wind up and prosecute and defend suits. Up until the amendment, the LLC lost its right to prosecute and defend suits if it failed to reinstated within two years of administrative dissolution. In effect, for three years an LLC can be sued and defend regardless of whether it is cancelled. If a company fails to properly wind up its affairs, its members can be held individually liable.

[17] *Or.-Wash. R.R. & Navigation Co. v. Wash. Tire & Rubber Co.*, 126 Wash. 565, 568, 219 P. 9 (1923).

[18] 2 Wn.2d 243, 250, 97 P.2d 1066 (1940).

[19] *Wash. Tire*, 126 Wash. 565.

argues that—had it not settled—the homeowners association could have brought an action directly against it. While we agree that this was an avenue open to the homeowners association, that conjecture in no way negates the fact that Steinvall had no obligation to enter into that settlement. Roosevelt, having been administratively dissolved and cancelled, could not maintain an action against any of the subcontractors. No subcontractor, including Steinvall, can recover under the contractual indemnity clause because no subcontractor was legally obligated to pay damages to Roosevelt.

¶12 The trial court is affirmed.

BAKER and ELLINGTON, JJ., concur.