[Nos. 57943-6-I; 58345-0-I.   Division One.   July 14, 2008.]

THE HARTFORD INSURANCE COMPANY, *Appellant*, v. THE OHIO
CASUALTY INSURANCE COMPANY ET AL., *Defendants*,
AMERICAN STATES INSURANCE COMPANY ET AL.,
*Respondents.*

*Earl M. Sutherland* (of *Reed McClure*), for appellant.

*William F. Knowles* (of *Cozen O'Connor*) and *Irene M. Hecht* and *Jason P. Chukas* (of *Keller Rohrback, LLP*), for respondents.

¶1 BECKER, J. — This appeal is a sequel to our earlier decision in *Maple Court Seattle Condominium Ass'n v. Roosevelt, LLC*, 139 Wn. App. 257, 265, 160 P.3d 1068 (2007). Roosevelt, a limited liability company that developed a condominium, settled a construction defect lawsuit brought by the condominium association. Roosevelt then brought third-party claims against the subcontractors, but

these claims were dismissed. We affirmed the dismissal in *Maple Court*, holding that Roosevelt lacked standing to sue the subcontractors after its certificate of formation was cancelled.

¶2 The present appeal is by Hartford Insurance Company, the insurer which paid the settlement on behalf of Roosevelt. Hartford seeks to maintain a subrogation action to compel contribution from the subcontractors' insurers whose policies designated Roosevelt as an additional insured. The other insurers argue that Hartford's duty to indemnify Roosevelt ended when Roosevelt's existence was cancelled and, as a result, Hartford's contribution to the settlement was voluntary so that no subrogation may be permitted. We conclude, however, that Hartford did not act as a volunteer under these circumstances and may seek contribution from other insurers who had agreed to cover Roosevelt's liabilities.

## FACTS

¶3 Roosevelt LLC, a limited liability company, was the developer of the Maple Court condominium project on Roosevelt Way in Seattle. Roosevelt did not take the administrative steps required by statute to continue its existence as a limited liability corporation. The secretary of state administratively dissolved Roosevelt on September 23, 2002. A two-year statutory grace period began to run during which Roosevelt could either seek reinstatement or wind up its affairs.

¶4 The Maple Court Seattle Condominium Association sued Roosevelt in December 2003 for damages resulting from allegedly faulty construction. In July 2004, Roosevelt filed a third party complaint against construction manager Steinvall Construction, Inc., and several subcontractors who worked on the condominium project.

¶5 On September 23, 2004, the secretary of state cancelled Roosevelt's certificate of formation because the two-year statutory grace period for seeking reinstatement had expired.

¶6 In December 2004, Steinvall answered and filed cross-claims against the subcontractors, claiming to be a third party beneficiary of the subcontracts they had entered into with Roosevelt. Steinvall's claims were entirely derivative of Roosevelt's, as Roosevelt was the only entity that had sued Steinvall.

¶7 Roosevelt and Steinvall were defended in the underlying Maple Court lawsuit by their respective insurers—Roosevelt by appellant The Hartford Insurance Company, and Steinvall by Western Heritage Insurance Company.

¶8 In March 2005—six months after the cancellation occurred—Roosevelt and Steinvall settled the condominium association's claims for $2 million. Under the settlement agreement, Hartford paid the association $400,000 on behalf of Roosevelt and Western Heritage paid the remaining $1,600,000 on behalf of Steinvall. Roosevelt, Steinvall, and Western Heritage assigned to Hartford all claims and rights they held against other parties and insurers in the underlying lawsuit.

¶9 The subcontractors discovered that Roosevelt had been cancelled. In July and August 2005, they obtained dismissal of Roosevelt's third party and indemnity claims against the subcontractors on the basis that Roosevelt ceased to exist as a legally cognizable entity on September 23, 2004, and thereafter did not have standing to prosecute a claim. The subcontractors obtained dismissal of Steinvall's cross-claims against the subcontractors on the basis that Steinvall's claims were entirely derivative of Roosevelt's now-invalid claims. This court affirmed the dismissals, concluding that "any settlement that Steinvall made was on behalf of Roosevelt and was gratuitous since Roosevelt was not a legal entity and could not pursue a claim against Steinvall. . . . Since Steinvall had no duty to pay Roosevelt, none of the subcontractors had a duty to pay Steinvall." *Maple Court*, 139 Wn. App. at 265 (affirming dismissal of claims against subcontractors by both Roosevelt and Steinvall).

¶10 The present appeal arises from an action for declaratory relief filed in August 2005 by Hartford against Ohio Casualty Insurance Company and American States Insurance Company to recover amounts paid in the Maple Court settlement. Ohio Casualty Insurance Company insured subcontractor MAP Construction. American States Insurance Company insured subcontractors Grateful Siding, Quality Surfacing, and Tile Technology.[1] Hartford alleged that the defendant insurers had improperly declined to defend and indemnify Roosevelt as required by certain subcontractor policies in which Roosevelt had the status of an additional insured. Hartford sought equitable contribution for the amounts paid in settlement and also asserted its rights as an assignee of Roosevelt, Steinvall, and Western Heritage.

¶11 The trial court dismissed Hartford's suit against Ohio Casualty and American States on summary judgment. Hartford has appealed from each order of dismissal. The appeals have been consolidated.

██ ██ ¶12 We review de novo an order on summary judgment and engage in the same inquiry as the trial court. Summary judgment is properly granted when the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. The moving party bears the initial burden of establishing its right to judgment as a matter of law. Once the moving party satisfies its initial burden, the burden then shifts to the nonmoving party to show that a triable issue exists. All reasonable inferences from the evidence must be construed in favor of the nonmoving party. *Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 139 Wn. App. 743, 752 n.1, 162 P.3d 1153 (2007).

---

[1] In addition to Ohio Casualty and American States, Hartford sued Safeco Insurance Company and Mutual of Enumclaw Insurance Company. On appeal, the parties agreed to dismiss Safeco and Mutual of Enumclaw because they did not insure any of the subcontractors.

¶13 This court's opinion in *Maple Court* was issued after the parties to this appeal filed their briefs. In a supplemental brief, Hartford concedes that it no longer has a viable theory for recovery as the assignee of Western Heritage. Because Steinvall had no duty to pay the association anything, Western Heritage acted as a volunteer when it contributed to the settlement on behalf of Steinvall. As a general rule, a mere volunteer in the payment of a claim cannot successfully maintain an action against another claimed by such volunteer to be the one liable for the payment thereof. *Maple Court*, 139 Wn. App. at 265.

¶14 This concession eliminates from consideration the $1.6 million Western Heritage paid to the Maple Court Association on behalf of Steinvall. As to the $400,000 that Hartford itself contributed to the settlement on behalf of Roosevelt, Hartford makes the additional concession that it cannot seek contribution as the assignee of Roosevelt. Roosevelt's assignment of rights was invalid because it occurred after Roosevelt's certificate of formation was cancelled. But Hartford contends that it still may be equitably entitled to recover from the other insurers through subrogation.

¶15 Subrogation is an equitable doctrine which seeks to impose ultimate responsibility for a loss on one who in equity and good conscience should bear it. *Mahler v. Szucs*, 135 Wn.2d 398, 411, 957 P.2d 632 (1998). Subrogation is the substitution of one person for another so that he may succeed to the rights of the creditor in relation to the debt or claim and its rights, remedies, and securities. It applies where one advances money to pay the debt of another to protect his own rights. *Newcomer v. Masini*, 45 Wn. App. 284, 286, 724 P.2d 1122 (1986).

¶16 Equity will not aid a volunteer. An insurer who acts as a volunteer in making payment on behalf of its insured will lose the right to recover contribution from other insurers on the loss. *Clow v. Nat'l Indem. Co.*, 54 Wn.2d 198, 207-08, 339 P.2d 82 (1959). The defendant insurers contend Hartford acted as a volunteer in settling

the case because after September 23, 2004, Roosevelt's affairs were wound up and it ceased to exist as an entity that could prosecute and defend lawsuits.

¶17 Whether one acts as a volunteer is determined in light of all surrounding circumstances. *Ellenburg v. Larson Fruit Co.*, 66 Wn. App. 246, 251-52, 835 P.2d 225 (1992). One is a volunteer and not entitled to subrogation if, in making payment, he has no right or interest of his own to protect and acts without obligation, moral or legal, and without being requested to do so by a person liable on the obligation. *Newcomer*, 45 Wn. App. at 288-89. One who settles under threat of civil suit is not a volunteer. An insurer's payment is not voluntary simply because the insurer may have a defense to coverage. *Jacob's Meadow*, 139 Wn. App. at 768.

¶18 These equitable principles favor Hartford. Hartford is not in the same position as Western Heritage, Steinvall's insurer. Western Heritage's contribution to the settlement was voluntary because Maple Court Association did not sue Steinvall. By contrast, Maple Court Association did sue Roosevelt, Hartford's insured. Hartford's duty to defend Roosevelt arose when that complaint was filed. *See Griffin v. Allstate Ins. Co.*, 108 Wn. App. 133, 138, 29 P.3d 777 (2001). The Maple Court complaint was filed in December 2003, before Roosevelt was cancelled.

¶19 The defendant insurers argue that Hartford's duty to Roosevelt ended two months later when Roosevelt was cancelled, making Hartford's contribution to the settlement voluntary. We disagree. Even though Roosevelt lost the right to sue upon being cancelled in September 2004, Roosevelt remained subject to suit for at least another year. A recent survival of claims statute provides a three-year period after the effective date of dissolution within which to commence actions against a dissolved limited liability company. The statute applies retroactively. RCW 25.15.303, *amended by* LAWS OF 2006, ch. 325, § 1; *see Chadwick Farms Owners Ass'n v. FHC, LLC*, 139 Wn. App. 300, 309, 160 P.3d 1061 (2007). The effective date of dissolution is the date of

administrative dissolution. *Serrano on Cal. Condo. Homeowners Ass'n v. First Pac. Dev., Ltd.*, 143 Wn. App. 521, 525, 178 P.3d 1059 (2008). The settlement to which Hartford contributed to indemnify Roosevelt occurred in March 2005. At that point, six months still remained during which suits against Roosevelt could be initiated.

¶20 "The legislature's purpose in enacting the survival provision was to provide remedies for parties injured by acts of an LLC and to provide an incentive for the LLC to act in good faith." *Chadwick Farms*, 139 Wn. App. at 311. A limited liability company that has dissolved "shall pay or make reasonable provision to pay all claims and obligations" and such claims are to be paid out of the assets remaining after the winding-up process. RCW 25.15.300(2). Hartford contends that an insurance policy is an asset that can remain after winding up, and the defendants do not dispute this. To hold that the insurance policy cannot be reached by the LLC's creditors after the winding up process is complete would thwart the statutory purpose of requiring a dissolving corporation to leave behind such assets as will reasonably provide for unfulfilled claims and obligations. We therefore reject the argument that Roosevelt's defunct status terminated Hartford's duty of indemnification.

¶21 Ohio Casualty suggests that Hartford could have refused to indemnify Roosevelt in the settlement because after cancellation, Roosevelt was unable to assert indemnity or bad faith claims against Hartford. We reject this argument as inconsistent with the insurer's obligation to act in good faith and as overly confident that Hartford no longer faced any threat of civil litigation. We note what was said in *Chadwick Farms*: "While cancellation marks the end of an LLC as a separate legal entity, it does not necessarily follow that claims against the LLC or its managers or members also abate." *Chadwick Farms*, 139 Wn. App. at 314. In this evolving landscape of liability, the fact that Roosevelt lacked standing to enforce the policy is not necessarily dispositive of Hartford's obligations. Where an insurer has been paid to provide indemnity, the insurer acts

prudently and in protection of its own interests by making the coverage available even though its insured is defunct, particularly when there is a claim survival statute.

¶22 American States argues that Hartford's remedy to preserve its subrogation rights was to ensure that its insured, Roosevelt, reinstated itself before cancellation. We find this argument unpersuasive. American States does not provide any authority indicating that Hartford had any power to make Roosevelt stay in business.

¶23 We hold that Hartford was not acting as a volunteer or intermeddler when it paid $400,000 on behalf of its insured. Hartford was not barred from pursuing reimbursement through a subrogation action, and the orders of summary judgment cannot be affirmed on the basis that Hartford's insured went out of existence while the condominium lawsuit against it was pending.

¶24 In addition to the argument that Hartford could not pursue subrogation because it acted as a volunteer, American States and Ohio Casualty argued an alternative basis for summary judgment: that Hartford was not entitled to contribution from them because they had no coverage obligation to Roosevelt. The defendants maintain that Roosevelt was not an additional insured under the policies they issued to the subcontractors on the Maple Court project. The policies contain different language and we address them separately.

## AMERICAN STATES

¶25 American States insured three of the subcontractors involved with the Maple Court project: Tile Technology, Quality Surfacing, and Grateful Siding. Each of the insurance policies provided coverage to the subcontractor for "bodily injury" and "property damage" liability if the injury or damage is caused by an "occurrence" and if it

occurs during the policy period.[2] Each policy named as an "additional insured" any person or organization "for whom you are required by written contract, agreement or permit to provide insurance." In situations not involving the subcontractor's premises, the additional insured endorsement provided that the additional insured was an insured only with respect to "[y]our ongoing operations for that insured, whether the work is performed by you or for you."[3]

¶26 The policies do not define "ongoing operations." American States argued below that this term is to be understood as excluding completed operations. Hartford responded that the most sensible way to interpret the term was that if the property damage arose out of the ongoing operations of the subcontractor, Roosevelt was covered even if the subcontractor had completed operations before the claim was asserted. So, according to Hartford, Roosevelt's liability for a construction defect should be covered if the defect arose at the time of construction, even if it was not noticed until after project completion because the damaging effects got progressively worse over time. "In other words, it is the origin of the defect, not when the claim was made, that matters."[4] American States replied that defining "ongoing operations" as occurring whenever the claim originated would create an ambiguity where none exists, and would provide an additional insured such as Roosevelt with "long-tail coverage beyond the ongoing operations of American States' named insureds."[5]

¶27 Hartford's argument is unsupported by legal authority, whereas American States' position is supported by *Pardee Construction Co. v. Insurance Co. of West*, 77 Cal. App. 4th 1340, 1359-61, 92 Cal. Rptr. 2d 443 (2000). *Pardee*

---

[2] Clerk's Papers (American States (AS)) at 1523 (Grateful Siding); Clerk's Papers (AS) at 1500 (Tile Technology); Clerk's Papers (AS) at 1479 (Quality Surfacing).

[3] Clerk's Papers (AS) at 1536 (Grateful Siding); Clerk's Papers (AS) at 1514 (Tile Technology); Clerk's Papers (AS) at 1492 (Quality Surfacing).

[4] Clerk's Papers (AS) at 1922.

[5] Clerk's Papers (AS) at 1931.

discusses the evolution of language in standard insurance forms for additional insured endorsements in commercial general liability coverage. The history of these forms as set forth in *Pardee* suggests that when such coverage is limited by the phrase "your ongoing operations," the endorsement evinces an intent to provide coverage to the additional insured only for liability that arises while the work is still in progress. An example of such liability would be "a course of construction work site accident involving bodily injury or property damage." *Pardee*, 77 Cal. App. 4th at 1360. Without such clearly limiting language, the coverage could be interpreted as extending to completed operations. This would allow a contractor who is an additional insured to be indemnified for damages arising from a subcontractor's work even if it is not discovered for years. *Pardee* recognizes that contractors who have insisted upon being named as additional insureds will reasonably expect to be covered for the same completed operations as their subcontractors. "Mindful such litigation is typically complex and expensive, it is reasonable to conclude the key motivation in procuring an additional insured endorsement is to offset the cost of defending lawsuits where a general contractor's liability is claimed to be derivative." *Pardee*, 77 Cal. App. 4th at 1361. The court concludes that to avoid such broad coverage for an additional insured, the insurer must draft and incorporate an express coverage limitation in the policy and endorsement language. The "ongoing operations" term is such a limitation. *See also Weitz Co. v. Mid-Century Ins. Co.*, 181 P.3d 309 (Colo. App. 2007).

¶28 We find the discussion in *Pardee* persuasive. We therefore conclude that since the additional endorsement for Roosevelt in the American States policies was limited to "ongoing operations," American States was correct in its argument that the additional insured endorsement "limited Roosevelt's coverage to property damage arising out of the subcontractors' work in progress only."[6]

---

[6] Clerk's Papers (AS) at 1713.

¶29 Whether American States was justified in refusing Roosevelt's tender of defense on the basis that the claims did not arise out of ongoing operations depends on the factual allegations and claims for relief stated in the complaint filed against Roosevelt by the condo association. An insurer's duty to defend an action brought against its insured arises when a complaint against the insured, construed liberally, "alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Unigard Ins. Co. v. Leven*, 97 Wn. App. 417, 425, 983 P.2d 1155 (1999). American States' motion for summary judgment asserted that the complaint alleged damages that arose after the association assumed control over the condominium, not out of ongoing operations. Hartford responded that "the moving papers are deficient for failure to identify the construction defects in issue and to offer expert testimony on when they first developed."[7] American States argued in reply that the burden was on Hartford as the nonmoving party to submit evidence showing that property damage caused by the subcontractors occurred during ongoing operations.

¶30 The moving party on summary judgment must produce factual evidence showing that it is entitled to judgment as a matter of law. The burden then shifts to the nonmoving party to set forth facts showing that there is a genuine issue of material fact in dispute. *Hash v. Children's Orthopedic Hosp. & Med. Ctr.*, 110 Wn.2d 912, 915, 757 P.2d 507 (1988). Hartford contends American States offered no factual presentation on the absence of coverage so as to negate Hartford's case, and that only a legal question was presented by the motion for summary judgment. We disagree. The underlying complaint by the condo association was in the record, as was American States' letter denying Roosevelt's tender.[8] The complaint alleged construction defects. It did not specifically allege liability arising from

---

[7] Clerk's Papers (AS) at 1922.

[8] Clerk's Papers (AS) at 1544-58 (Compl.); Clerk's Papers (AS) at 1684-86 (American States' letter dated May 27, 2005).

the work of the subcontractors while it was still in progress. The letter refusing Roosevelt's tender states that the work of the named insured subcontractors was completed and accepted by Roosevelt in April 1999, and the condo owners did not own the units until after the completion of subcontractor operations. American States thus created a record establishing the facts justifying its determination that Roosevelt was not entitled to coverage as an additional insured. If there were allegations in the complaint or other evidence that would have shown that American States was being asked to cover Roosevelt for liability arising from work in progress, it was Hartford's burden as the nonmoving party to present such evidence in order to be entitled to go to trial on the breach of contract claim. Because Hartford did not do so, the trial court did not err in granting the American States motion for summary judgment.

¶31 American States seeks reasonable attorneys' fees and costs for having to defend against Hartford's frivolous appeal. An appeal is frivolous if "no debatable issues are presented upon which reasonable minds might differ, *i.e.*, 'it is devoid of merit that no reasonable possibility of reversal exists.'" *Olson v. City of Bellevue*, 93 Wn. App. 154, 165, 968 P.2d 894 (1998) (internal quotation marks omitted) (quoting *Brin v. Stutzman*, 89 Wn. App. 809, 828, 951 P.2d 291 (1998)). Hartford's arguments are not frivolous. We decline to award fees.

## OHIO CASUALTY

¶32 Ohio Casualty insured MAP Construction, Inc., one of the subcontractors involved with the Maple Court project. The policy issued to MAP Construction includes a "Blanket Additional Insured" provision. It amends the definition of "Who Is An Insured" to include "any person or organization whom you are required to name as an additional insured on this policy under a written contract or agreement."[9] MAP

---

[9] Clerk's Papers (Ohio Casualty (OC)) at 1567.

Construction was required by the terms of the subcontract to name Roosevelt as an additional insured.[10]

¶33 The policy covers liability resulting from "bodily injury" or "property damage" if the injury or property damage was caused by an "occurrence" that occurred during the policy period.[11] Further, the insurance provided to Roosevelt under the circumstances of this case was limited in that the liability had to arise out of work done by MAP Construction for Roosevelt (" 'your work' for that additional insured for or by you.")[12] However, unlike the American States policies, the Ohio Casualty policy did not limit Roosevelt's coverage as an additional insured to damage arising out of the "ongoing operations" of the subcontractors.

¶34 Below, Ohio Casualty's motion for summary judgment contended that Hartford "has not presented any evidence whatsoever" of property damage to the Maple Court condos occurring during the policy period, or of a causal connection between the acts of MAP Construction and any property damage to the condos.

¶35 Hartford, responding, argued (as it had done in response to the American States motion) that it was Ohio Casualty's burden on summary judgment to create a factual record that would negate Hartford's claim of additional insured status before the burden shifted to Hartford. It is unnecessary to decide whether Ohio Casualty met its initial burden because, assuming it did, Hartford proceeded to raise an issue of material fact. Hartford offered the declaration of Keith Soltner, a licensed and registered architect, to show that MAP Construction's work for Roosevelt caused property damage during the Ohio Casualty policy period. MAP Construction framed the project and installed vinyl

---

[10] Clerk's Papers (OC) at 1505, 1519 (subcontract entered into between MAP Construction, Inc., and Roosevelt LLC, with respect to the Maple Court Condominium Project).

[11] Clerk's Papers (OC) at 1544.

[12] Clerk's Papers (OC) at 1567.

windows and patio sliders. Soltner said he observed construction that failed to meet building code requirements and industry standards. Soltner noted the following defects:

a. Omission of penetration wraps at windows and sliding glass doors;

b. Window frames and nail flanges for windows and sliding glass doors are damaged;

c. Rough openings for the windows are undersized;

d. Nail spacing for window and sliding glass door attachment exceeds 16 inches on center;

e. Nails used to install windows are not galvanized and have rusted.[13]

Based on these defects, Soltner offered his opinion that "MAP Construction caused and/or contributed to defective conditions at the Maple Court project."[14]

Based upon my experience, training, education and investigation of the Maple Court project and relevant documents . . . it is my opinion that the defective conditions identified above caused property damage to the building including, but not limited to, water intrusion at the windows and sliding glass doors damaging the sheathing and other building components. Further, based upon my experience, training, education and investigation of the Maple Court project and relevant documents . . . it is my opinion that the damage caused by water intrusion began to occur not later than the fall of 1999, the first rainy season following installation of the building envelope.[15]

¶36 Ohio Casualty argues that Soltner's statements are too conclusory to demonstrate "property damage" in the form of physical injury to tangible property. But Soltner specifically states that the defective conditions caused "water intrusion through the building envelope and moisture damage in the building walls damaging the weather resistive barrier, sheathing, framing and other building compo-

---

[13] Clerk's Papers (OC) at 1618.

[14] Clerk's Papers (OC) at 1618.

[15] Clerk's Papers (OC) at 1618-19.

nents."[16] Soltner's declaration, when construed in the light most favorable to Hartford as the nonmoving party, establishes physical injury to tangible property caused by MAP Construction's work. We conclude Hartford raised a triable issue with respect to Roosevelt's status as an additional insured, and may pursue reimbursement from Ohio Casualty.

## CONCLUSION

¶37 Because claims against Roosevelt survived its cancellation and dissolution, Hartford's duty to defend and indemnify Roosevelt also survived. Hartford did not act as a volunteer when it settled the claim against Roosevelt and accordingly was not barred from seeking contribution in a subrogation action against other insurers who had agreed to cover Roosevelt as an additional insured on the policies of the subcontractors.

¶38 The damages sought in the lawsuit by the condo association arose out of the subcontractors' completed operations. The American States policy limited Roosevelt's coverage as an additional insured to damage arising out of a subcontractor's ongoing operations. Therefore, American States had no obligation to contribute to the settlement and was properly dismissed on summary judgment.

¶39 The Ohio Casualty policy does not contain the "ongoing operations" limitation. The only policy limitation asserted by Ohio Casualty is that there must be a showing of property damage caused by the insured subcontractor during the policy period. Because Hartford submitted evidence sufficient to take the issue of property damage to trial, the order granting summary judgment to Ohio Casualty must be reversed.

¶40 Affirmed as to American States; reversed as to Ohio Casualty.

Dwyer, A.C.J., and Cox, J., concur.

---

[16] Clerk's Papers (OC) at 1617.