IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| LEONARD BROWNING, a single person, BARBARA DRAKE, a single person, | ) ) ) | No. 31412-0-III (consolidated with 31508-8-III) |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DOTY FAMILY TRUST; FOREST C. DOTY and LIL DOTY, husband and wife, and the marital community composed thereof; CHARLES C. AMBURGEY, SR. and SANDRA R. AMBURGEY, husband and wife, and the marital community composed thereof; TRACY D. MONK and PATRICIA L. MONK, husband and wife, and the marital community composed thereof; STEVE GREENE, a single person; SUSAN BEAMER, a single person; CHERITH TRUST; JAMES GIBSON and SYLVIA GIBSON, husband and wife, and the marital community composed thereof, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Respondents. | ) | |

FEARING, J. — Plaintiffs Leonard Browning and Barbara Drake appeal factual

findings of the trial court claiming they, not the defendants, told the truth at trial. They

fail to recognize that the purpose of an appeal is not to retry the credibility of parties and witnesses. Since the trial court's factual findings are supported by the trial transcript, we affirm the rulings of the trial court.

Leonard Browning and Barbara Drake sought declaratory judgment proclaiming they have a right to drive through a tract of land, designated as the Skookum Creek segregation, to reach an adjacent farm owned by Drake and leased by Browning. The two base their rights of passage upon numerous theories: an express easement under the Skookum Creek Declaration of Protective Covenants and Easements, a prescriptive easement, an easement by implication, an easement by necessity, and a public road. The two also asked for damages for the defendants' interference with that right. Professor Philip A. Trautman, University of Washington Civil Procedure Professor, taught that, if one throws a party, invite all the neighbors. Browning and Drake followed this advice. The defendants include the Doty Family Trust, Forest and Lil Doty, Charles and Sandra Amburgey, Tracy and Patricia Monk, Steve Greene and Susan Beamer Greene, Cherith Trust, and James and Sylvia Gibson, all of whom own land in the Skookum Creek segregation, a pristine setting in Pend Oreille County.

The Doty Family Trust and Forest and Lil Doty counterclaimed against Leonard Browning alleging he removed a fence and trees from their property without their consent, warranting treble damages under Washington's timber trespass statute. They also counterclaimed against Leonard Browning and Barbara Drake for a declaration

2

establishing the lot line between their land and Drake's land. The trial court concluded

that Drake and Browning had no right of access through Skookum Creek segregation to

the farm and denied plaintiffs any relief. The trial court also held that Leonard Browning

intentionally removed trees from Forest and Lil Doty's property, warranting treble

damages of $49,350 under RCW 64.12.030. Finally, the trial court declared the boundary

between the Doty land and Barbara Drake's land to be in accordance with a survey

prepared on behalf of the Dotys.

This appeal raises two general issues: (1) whether there exists some form of

easement or right of access through the Skookum Creek large lot segregation to the Drake

farmland, and (2) whether substantial evidence supports the trial court's findings that

Leonard Browning intentionally removed trees from Forest and Lil Doty's property.

## FACTS

A diagram and satellite photo below depict the tracts of land owned by the parties.

Barbara Drake owns lot 21 of the Skookum Creek large lot segregation. Drake also owns

the larger parcel of land that abuts the western edge of lots 21, 22, 25, and 26 and touches

the southern edge of lots 26 and 27. The parties refer to this larger parcel as "the farm."

In 2008, Drake entered a "Lease Purchase Agreement" with Leonard Browning for the

farm. Clerk's Papers (CP) at 219-20. The Doty Family Trust owns lots 22, 23, and 24;

Charles and Sandra Amburgey own lots 17 and 18; Tracy and Patricia Monk own lots 19,

3

20 and the southern half of 16; James and Sylvia Gibson through the Cherith Family

Trust own lot 25; and Steve Greene and Susan Beamer Greene own lot 26.

 

The numbered lots derive from the Skookum Creek large lot segregation. These lots are

subject to the August 8, 1972 Skookum Creek Declaration of Protective Covenants and

Easements. The farm is not subject to this declaration.

In relevant portion, the declaration provides:

ARTICLE C—EASEMENTS AND RESERVATIONS

1. Seller does hereby declare and reserve sixty (60) foot wide non-exclusive, private easement for ingress, egress, and utilities over and across the Real Property, said easements to be located as shown on the attached Schedule B. Centerline of each of said easements shall follow the centerline of each existing or proposed road as located on the attached Schedule B.

. . . .

5. All of the easements declared herein shall be divisible, perpetual, and assignable, and shall be appurtenant to and run with the Real Property.

4

> Seller hereby reserves for itself, its personal representatives, agents and assigns, the right to the use and benefit of all of said easements and further hereby reserves the right to grant the use of said easements to all parties who now are or shall hereafter become Owners and to parties supplying utilities to any portion of the Real Property.
>
> 6. The Owners of sixty-six (66) per cent or more in area of the Real Property shall have the right, power, and authority, by written declaration, to dedicate all or any part of any of the above-described easements to public use at any time.

CP at 70-71. The declaration defines "seller" as "THE TRANS-WEST COMPANY"; "Real Property" as "all of the real property described on the attached Schedule B", that is, the numbered lots; and "Owner" as "the holder of a fee simple interest in any parcel of the Real Property" CP at 69. The easement and proposed road can be seen on the diagram above as beginning north of lot 16, running south to lot 23, and turning southwest at the southern end of lot 23. The used portion of this easement was later designated Skookum Meadow Drive.

The Dotys purchased lot 24 in 1991. In 1991 or 1992, Forest Doty installed a single gate across Skookum Meadow Drive near his home on lot 24. He had lot 24 surveyed in 1996. The Dotys purchased lots 22 and 23 in 1998, after which Forest Doty installed other gates across Skookum Meadow Drive. Skookum Meadow Drive can be seen on both the satellite photo and the diagram above. The Drive runs along lot 24's north line and dips into lot 24 in the extreme northwest of the lot.

On the diagram, Skookum Meadow Drive continues past the Doty gates southwest to lots 25 and 26, belonging to the Gibsons and Greenes respectively. The access leading

5

to the Gibson and Greene properties remains seasonal access, because of watery soil conditions. At one time, Forest Doty and Charles Amburgey laid gravel to make the road passable for the Gibsons.

Testimony at trial varied about whether Skookum Meadow Drive continues through lots 25 and 26 to the farm. The photograph above suggests the drive ends in the northeast corner of lot 25; whereas, the diagram above suggests the road continues into lot 26 and beyond. Veteran Pend Oreille County resident Lawrence Ashdown testified that Skookum Meadow Drive continues through the lots, but is not passable in winter. Ashdown last used that road in the 1960s. Charles Amburgey testified that the road ends at the Greenes' home on lot 26. There is a path that continues further, Amburgey noted, but he could not get a snowmobile through the path in 1993. Barbara Price, who lived on the farm in the late 1990s, testified that the road connected to the farm. According to Price, however, it was not suitable for cars.

Susan Greene, owner of lot 26, testified that the road ends at a turnaround on her property. After the turnaround, a small deer path or logging road continues toward the farm. Specifically, Greene testified:

> So at that point, to answer your original question, I've been back to where you're talking about. And—it doesn't look like there could be—I mean,—really thought about this, it doesn't look like there could have been a road through there at all, because on the other side of where that deer trail is, there's no road bed. There's stubble, there's stumps. It just doesn't look possible that there could have ever been a road.

6

Report of Proceedings (RP) at 265.

Forest Doty testified that the road does not continue to the farm. Barbara Drake testified that Skookum Meadow Drive goes through lots 25 and 26 to her farm. Leonard Browning testified that he drove a car on the Skookum Meadow Drive to the farm. Browning further testified that he would like to improve the road, to enable access to the farm year-round.

Visitors have accessed the farm via two routes other than Skookum Meadow Drive. Through the late 1990s, Barbara Price lived on the farm with her six children, her boyfriend, and his two children. Price testified that they usually accessed the farm from the west, until a bridge washed away in 1997 or 1998. Sandra and Charles Amburgey similarly testified that there formerly was a bridge. Since the bridge washed away, however, Big Dog Drive has been the primary route. Barbara Drake testified that she always takes Big Dog Drive. Big Dog Drive runs along the north boundary of lot 21, owned by Drake, and is labeled on the satellite photo above.

On June 19, 2006, Leonard Browning wrote Forest and Lil Doty, "Since you have tied this property up in the excess of ten years with brute force, I feel I am being very equitable in allowing you forty-eight hours to remove you [sic] gate, your fence, or any other object that obstructs a sixty foot easement through your property." CP at 20.

7

PROCEDURE

On August 7, 2006, Leonard Browning filed suit against the Dotys, the

Amburgeys, and the Monks. On August 16, 2007, the court joined Barbara Drake as a

plaintiff. On August 23, Leonard Browning and Drake amended the complaint. The

amended complaint alleged:

> 3.33 Plaintiff Leonard N. Browning has an easement by necessity along the portion of Skookum Meadows Drive traversing Lots 23 and 24-DT, 25-CT, and 26-G/B owned by the Doty Family Trust, the Cherith Trust, and Defendants Greene and Beamer.
> 3.34 There is a necessity for the easement over Lots 23 and 24-DT, 25-CT, and 26-G/B to secure and maintain the quiet enjoyment of The Farm.
>
> . . . .
>
> 3.43 Plaintiff is purchasing Lot 21-B, and must access Lot 21-B via an existing road set out on Skookum Creek development Schedule B, commonly known as Watertower Lane; and by a deeded access road commonly known as Big Dog Road, located on Defendants Monk's property at Lot 20-M.
>
> . . . .
>
> 3.50 Lot 21-B is landlocked, and cannot be accessed by any means other than across Defendants Monk's property: whether by use of the deeded easement commonly referred to as Big Dog Road; and/or by the "proposed 60 foot easement" set out in Schedule B of Skookum Creek development to the west of Watertower Lane on the common border of Lot 20-M and Lot 23-DT to the easternmost corner junction of Lots 22-DT and 21-B.
> 3.51 Plaintiff Leonard N. Browning has an easement by necessity over Lot 20-M owned by Defendants Monk.

CP at 59, 61-62. Under "relief requested," Browning and Drake sought damages,

injunctive relief, and declaratory relief:

8

4.1 Plaintiff requests damages in the amount of $40,000 to be charged to each of the defendants separately and individually for acting in unison, in concert, and in conspiracy to deny Plaintiff's use of his properties as provided for in the Declaration of Covenants and Easements, said damages to be proven at time of trial.

4.2 For an order restraining all defendants from continuing to close, obstruct, stop up or interfere with plaintiff's rights of way; and from in any manner interfering with or attempting to prevent plaintiff from passing over, maintaining, improving and using the existing public rights of way and easements historically reserved for the public and as set out in the Declaration of Covenants and Easements, as plaintiff has no other adequate remedy at law.

4.3 For an order of specific performance requiring all defendants comply with the terms of the Declaration of Covenants and Easements by allowing plaintiff to use, maintain, and improve the existing roads and easements across defendants' various lots, and by allowing plaintiff to use, ditch, and maintain the 10-foot right-of-way servitude easements located on the borders of each of plaintiff and defendants' lots.

4.4 For declaratory judgment declaring plaintiff Leonard N. Browning has an easement by prescription over Lots 23 and 24-DT. 25-CT, and 26-G/B, as well as over Lot 20-M.

4.6 For declaratory judgment declaring plaintiff Leonard N. Browning has an easement by implication over Lots 23 and 24-DT, 25-CT, and 26-G/B, as well as over Lot 20-M.

4.7 For attorney fees and costs pursuant to the terms of the Declaration of Covenants and Easements.

4.8 For such other and further relief as the Court deems just and equitable.

CP at 63-64. Browning and Drake neither prayed for an easement by necessity, nor pled private condemnation under chapter 8.24 RCW.

On August 31, 2009, Forest and Lil Doty and their Family Trust counterclaimed that Leonard Browning removed an existing fence line between their property and the farm, and that Browning removed a substantial number of trees from their property. The

9

Dotys prayed for treble damages for the removed trees under chapter 64.12 RCW. The Dotys also asked the court to authorize them "to reinstall the fence as per the survey obtained by these defendants and that judgment be entered against the plaintiff for the amount necessary to replace the fence removed by the plaintiff." CP at 106.

On August 24, 2012, and before trial, the court dismissed all claims against the Monks with prejudice and without costs. Leonard Browning and Barbara Drake settled with the Monks outside of court. As part of the settlement, the Monks recognized two existing easements through lot 20 in favor of Drake's lot 21, for drainage, utilities, and access. Browning and Drake may thus access lot 21 via Big Dog Lane, along the border of the Monk's lots 19 and 20. These easements are for lot 21, but not the farm. Browning testified that Tracy Monk gave him and Drake "a 40-foot easement, here, to Lot 21, and he will allow us to access the farm, as long as we own it. And once we sell the farm that permission to go through 20 expires. Or if we sell Lot 21, you [sic] can no longer go through 20 to the farm." RP at 449.

Trial spanned four days in August 2009. During testimony, Leonard Browning admitted that he removed trees along the border of the farm and the Doty Family Trust's lot 22 in 2005 or 2006. Specifically, Browning testified:

> Q    My question to you is, did you cut these trees down and fall on the farm side of the property?
> A    Yes, I did. I cleared that out so I could fix the fence that was in bad state of repair.

10

Q    Why would you cut trees down and not use the existing tress [sic] to put the fence on, why did you feel that—
A    Because—Well, these trees, if you'll notice the size of them, they had grown up over 40 or 50 years. And these particular trees here are probably, oh, 12, 14 years old. And they were right on where the fence is; they were growing up between the fence. And I couldn't repair—put a new fence up with all these trees there. I had to clear them out in order to get a straight line—the same line that the old fence was on—and put in fence posts. You can't put fence posts in where there's a bunch of brush and second growth trees like that.
        And there's—You know, you can see from the size of them they're not merchantable. I was merely trying to rebuild my existing boundary fence. That's all I was trying to do.

RP at 420-21.

The Dotys called arborist Tim Kastning to testify about the trees Leonard

Browning removed. Pro se Browning examined Kastning as follows:

Q    On these stumps that you—numbered here, can you tell me where each one of those stumps was at, physically at? How far from the barbed wire they were?
A    If we were to go back there today and provided that the stumps were there—were still there and I have the pictures, yes, I can identify those stumps.
Q    So in other words as we stand here today you cannot tell me where these stumps are at, whether they were on the east side or west side of the old fence line. Is that correct?
A    No. All of the stumps were located between the old barbed wire fence line and the new fence that was—that was tied up against the trees. No stumps were inventoried that were on the west side of the old barbed wire fence.

RP at 644-45.

Tim Kastning relied on Forest Doty to define the boundary line between the farm

and the Dotys' lot 22. According to Forest Doty, relying on the 1996 survey, all trees

11

east of the old barbed wire fence were on his property. Kastning found 75 trees had been cut down east of the barbed wire fence. The trial court sought to clarify what trees Kastning surveyed:

> [Kastning]: The trees that I surveyed were located between the old barbed wire fence—
> THE COURT: Uh-huh.
> [Kastning]:—and the new fence that was zigzagged and tied up against tress, against the trees. I did not survey any stump that was on— between the old—barbed wire fence and where the new property line was being—was surveyed.
> THE COURT: And the new property line being further west than the old fence?
> [Kastning]: That's correct. So you have the new—new survey line, then you have the old barbed wire fence, and then we had the new fence that was being tied up to the trees. In between the old barbed wire fence, in order to move that new fence over, it appeared that trees had been cut in order there to get that fence put over there or what-have-you.

RP at 640-41.

According to Tim Kastning, "[t]o do a cost replacement on the trees, that is, like tree for like tree, would be a very exorbitant cost, and a difficult process." RP at 641. So, Kastning instead calculated the replacement cost as "the best way to come up with a valuation to make the owner of the property whole." RP at 641. Replacement, Kastning testified, would require the planting of 47 trees at a cost of $16,450, and watering for 10 weeks costing $3,000.

The court admitted the Dotys' 1996 survey of their property into evidence. Leonard Browning did not object, and relied on the survey when he cross-examined Tim

Kastning.

Susan Greene, owner of lot 26, testified to an easement in her chain of title, which reads, "Reservation by Grantors, their heirs, and/or assigns, of a 60-foot easement for unimpeded access over prior and existing roads for ingress and egress to adjoining property." CP at 399. Susan Greene testified that "adjoining property" does not refer to the farm. RP at 275.

Pend Oreille County Engineer Don Ramsey, who works in the county road department, testified that the roads shown on Skookum Creek Schedule B, including Watertower Lane and Skookum Meadow Drive, are private and have not been dedicated to the public.

Charles Amburgey testified that he and Leonard Browning previously discussed whether an easement exists, testifying:

> And we were talking about the road, and the 60-foot easement and all that, and he says he was going to do a lot of work on the road. And I told him that I would really appreciate the help, because, you know, I didn't have much help, other than Mr.—Doty and Mr. Monk. And I thought everything was—you know, he sounded good.
> And then I says, "Well, that 60-foot easement, some of those places—it's 60 foot, but it's not on—they don't have an easement on their property."—he said, "I don't care. I'll take 60 foot, 30 foot from the center of the road, and besides, I'm the best litigator and I never lost a case; I'm the best litigator in Idaho or Pend Oreille County.

RP at 169-70.

On January 3, 2013, the trial court entered findings of fact and conclusions of law.

13

As findings of fact, the court wrote:

1.8    Article C, Section 1 of the Declaration reserves a 60 foot wide, nonexclusive private easement for ingress, egress and utilities to each property subject to the Declaration. At Article C(4), the seller reserves easements for drainage and utility purposes along a ten (10) foot strip of land abutting any or all of the exterior boundaries of each parcel in the large lot segregation. The use of the word "abutting" is intended to provide for the easement being placed within the exterior ten (10) feet of any lot subject to the Declaration.

1.9    Article C(5) declared that the easements would be divisible, perpetual and assignable, and be apportioned to and run with the real property subject to the Declaration.

1.10   All rights under Article C of the Declaration were reserved to the sellers; there is no stated mechanism for the reserved rights to devolve to the purchasers of property subject to the Declaration.

1.11   All easements shown on Schedule B were intended to benefit only the owners subject to the Declaration. Thus, while Schedule B shows one of the easement roads as travelling outside the boundaries of the property subject to the Declaration on the southwest, there is no intent that the easements and/or roads benefit anyone other than the owners of the property subject to the Declaration.

. . . .    1.13   As any access from the Doty property to the Gibson and Green properties is described as private and divisible, the Court finds that the benefit of the access provided by the easement/pathway to the Gibson and Green properties is exclusive to them, and not to any other owner of property subject to the Declaration. Because the road easements shown on Schedule B of the Declaration run with the land, no owner has the right to deny Gibson or Green access to their properties. Gibson and Green have permitted Doty to maintain a gate precluding access to their properties by any other persons, including other owners subject to the Declaration.

1.14   At no time has any pathway or roadway connected the Green or Gibson properties to the property of the plaintiff. There is no implied easement in favor of plaintiff which would allow access through Skookum Meadows to any county road.

1.15   Plaintiff Drake's predecessor in interest was also an owner of Lot 21 and provided easement access for the farm property to Lot 21. Such access has since been extended along the north thirty (30) feet of Lot 21 to its intersection with Water Tower Lane. The extension of the road to Water

14

Tower Lane was not allowed for nor did it grant use to plaintiff Drake for the use of Water Tower Lane, nor any other roadway within the Skookum Creek Declaration.

. . . . 1.18   There is no express easement allowing the farm property access to any easement roadway shown within the Skookum Creek Declaration, other than the modified Big Dog Drive. For that matter, there is no evidence that any lot subject to the Skookum Creek Declaration has an express easement to travel along Skookum Meadow Drive to its intersection with Conklin Meadows Road. The farm property is landlocked, and no claim has been made for a private way of necessity pursuant to RCW 8.24.

1.19   On or between 2005 and 2006, plaintiff Browning removed forty-seven (47) trees from the Doty property. The removal of the trees was done intentionally, without lawful authority, without probable cause to believe the property belonged to him, and without the permission of the Dotys. The reasonable value of the trees is $16,450.

CP at 222-25.

Based upon the findings of fact, the trial court concluded Leonard Browning and Barbara Drake "do not have a right of access for the farm property which extends any further than the west edge of Lot 21, whether by adverse possession, necessity, or implication." CP at 225 (strikethrough initialed by Judge Monasmith). And the court entered judgment in favor of the Dotys against Browning for timber trespass in the amount of $49,350 as treble damages. In the order, the trial court wrote:

It is further ordered, adjudged and decreed that the plaintiffs do not have a right of access for the farm property which extends any further than the west edge of Lot 21, whether by adverse possession or implication.

That it is further ordered, adjudged and decreed that the property line between the farm and westerly boundary of the defendants' property shall be as set forth in the survey identified as Doty Exhibit No. 121 and as recorded under Auditor's No. 2006-0288768 on September 5, 2006, at Book 7, Page 9 of Surveys.

15

CP at 231.

At the presentment hearing for these findings and conclusions, Barbara Drake

asked the trial court to strike a reference to "necessity." RP at 875-76. Drake's counsel,

the Dotys' attorney, and the trial court discussed whether an easement by necessity was at

issue:

> MR. SHUMAKER: All right. And then on the—on the last page of
> the judgment, on the signature page, page 5,—And this one's going to be a
> little bit more problematic—it's—On line 3 it says, "whether by adverse
> possession, necessity or implication." And what I'd ask the court to do is to
> strike the word, "necessity." And the reason why is that in the court's
> findings of fact the court found that—that "no claim has been made for a
> private way of necessity pursuant to RCW 8.24."
> THE COURT: Right. There was some confusion, I think, about
> the—an easement by necessity versus a private way, which is a private
> condemnation action.
> MR. SHUMAKER: Sure. And since we didn't make a claim for
> that, or the court found that we didn't make a claim, I don't want to
> preclude my client or future purchasers of this property from—from
> bringing some kind of a claim of access by necessity.
> Now, do I think that it would be successful? I have no idea, under our
> (inaudible), every property or more, and somewhere—
> THE COURT: Well, let me—let me stop you right there, Mr.
> Shumaker.
> Mr. Humphries, what about that? Striking the word "necessity?" I
> guess, in the—with the idea of leaving that door open for a suit for a private
> way of necessity?
> MR. HUMPHRIES: I think in Mr. Browning's original pleadings
> that they filed, they did talk about a way of necessity—
> THE COURT: Talked about an easement of necessity. They never
> pled 8.24[, referring to chapter 8.24 RCW, the private condemnation
> statutes].
> MR. HUMPHRIES: Okay. Okay. I guess if you strike it, he'd also
> previously asked for—wording that—said he could bring another lawsuit,

16

but he's apparently not asking for that now.

THE COURT: Well, again, his was for an easement and declaratory judgment. And—said no to that. But I made a specific finding that there had not been a claim made for a private way of necessity, a private condemnation action.

MR. SHUMAKER: That's right. Okay. So, that's it for the judgment, your Honor.

RP at 875-76.

Later in the presentment hearing, James Gibson mentioned an easement by

necessity:

MR. GIBSON: At the trial it was brought out that—the property, the farm, was not—accessed by Mr. Proctor when he owned the farm property he never used Skookum Meadow Drive to get over there. This was something brought out by the witnesses of the defendant. Also the party that owned that property before selling it to the defendants never—

THE COURT: The plaintiffs?

MR. GIBSON: The plaintiffs. Excuse me. The plaintiffs—before selling it to the plaintiffs used Lenore Road for the ingress and egress until DNR [the Department of Natural Resources] took the bridge out. And that's the whole issue right now over this.

THE COURT: So, your point, sir?

MR. GIBSON: My point is, he has no need of necessity through the Skookum Meadow Road.

THE COURT: That's not for today.

MR. GIBSON: I see. That's for—But—but you're striking the word "necessity" as though—in your decision—

THE COURT: Well, because I think there's a conflation of the term of "easement by necessity" with a private way of necessity, which is a totally different concept. So, I'm saying no, there's no express easement, there's no implied easement. I leave it at that.

RP at 891-92.

On January 14, 2013, Leonard Browning moved for reconsideration. Browning claimed that "[o]n the first day of trial, the Hon. Court had ex parte communication with Drake's attorney, Doty's attorney, and Amburgey's attorney. All pro se defendants and plaintiff were excluded." CP at 234. The trial court denied the motion.

LAW AND ANALYSIS

Barbara Drake contends (1) the trial court failed to rule on the request for an easement by necessity and (2) the trial court erred when it failed to recognize a reserved public rights of way to the farm. Leonard Browning challenges many of the trial court's findings of facts—namely, 1.1, 1.2, 1.8, 1.11, 1.12, 1.13, 1.14, 1.15, 1.18, and 1.19. In doing so, Browning echoes Drake's argument that the trial court failed to recognize reserved public rights of way to the farm. Browning challenges the trial court's conclusion that he intentionally removed trees from the Dotys' property, arguing the trial court erred when it: concluded that the removed trees were from the Dotys' property; established the boundary between the Dotys' lot 22 and the farm when that issue was not before the court; concluded that Browning intentionally removed trees from the Dotys' property when he had probable cause to believe Drake owned the land; and concluded that Browning intentionally removed trees from the Dotys' property despite his right to repair the fence, which includes the removal of trees. Last, Leonard Browning alleges the trial court communicated ex parte with defendants' respective counsel.

18

*Standards of Review*

"Where the trial court has weighed the evidence, appellate review is limited to determining whether the trial court's findings of fact are supported by substantial evidence, and if so, whether the findings support the conclusions of law and the judgment." *Sac Downtown Ltd. P'ship v. Kahn*, 123 Wn.2d 197, 202, 867 P.2d 605 (1994). "Evidence is substantial if it is sufficient to persuade a fair-minded, rational person of the declared premise." *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010).

> We defer to the trier of fact in matters of witness credibility and conflicting testimony. We give the party who prevails in the trial court the benefit of all reasonable inferences from the evidence that favor the court's findings. Unchallenged findings are verities. We construe the absence of a finding against the party with the burden of proof.

*Barker v. Advanced Silicon Materials, LLC*, 131 Wn. App. 616, 626-27, 128 P.3d 633 (2006) (internal citations omitted). "If no finding is entered as to a material issue, it is deemed to have been found against the party having the burden of proof." *Pacesetter Real Estate, Inc. v. Fasules*, 53 Wn. App. 463, 475, 767 P.2d 961 (1989).

*Easement by Necessity*

Barbara Drake contends that the trial court erred by not ruling on her request for an easement by necessity. She cites to chapter 8.24 RCW, Washington's private condemnation statutes.

Barbara Drake never requested an easement by necessity. Instead Drake joined

Leonard Browning's amended complaint. Under the heading "facts and allegations," the amended complaint alleged, "Plaintiff Leonard N. Browning has an easement by necessity along the portion of Skookum Meadows Drive" and "Plaintiff Leonard N. Browning has an easement by necessity over Lot 20-M owned by Defendants Monk." CP at 59, 62. But Browning and Drake did not request an easement by necessity in the prayer for relief. Nor was this their theory of the case. Throughout trial, and again on appeal, Browning and Drake insisted on the right to use Skookum Meadow Drive as one of the "existing public rights of way and easements historically reserved for the public and as set out in the Declaration of Covenants and Easements." CP at 63.

Barbara Drake continues to conflate an easement by necessity with a private condemnation. When Drake asked the court to strike the word "necessity" from its findings and conclusion to indicate that the court had not ruled on such a claim, the court aptly commented, "I think there's a conflation of the term of 'easement by necessity' with a private way of necessity, which is a totally different concept." RP at 891.

As our Supreme Court explained in *Hellberg v. Coffin Sheep Company*, 66 Wn.2d 664, 666-67, 404 P.2d 770 (1965):

> An easement of necessity is an expression of a public policy that will not permit property to be landlocked and rendered useless. In furtherance of that public policy, we give the owner, or one entitled to the beneficial use of landlocked property, the right to condemn a private way of necessity for ingress and egress. RCW 8.24.010.

20

> Condemnation, however, is not necessary where the private way of necessity is over the land of the grantor or lessor of the landlocked property.
>
> The theory of the common law is that where land is sold (or leased) that has no outlet, the vendor (or lessor) by implication of law grants ingress and egress over the parcel to which he retains ownership, enabling the purchaser (or lessee) to have access to his property.

*See also, Visser v. Craig*, 139 Wn. App. 152, 163-65, 159 P.3d 453 (2007); *Ruvalcaba v. Kwang Ho Baek*, 175 Wn.2d 1, 6-9, 282 P.3d 1083 (2012). Easement by necessity and private condemnation are different and distinct actions. *See, e.g., Woodward v. Lopez*, 174 Wn. App. 460, 300 P.3d 417 (2013). Neither Leonard Browning nor Barbara Drake ever cited chapter 8.24 RCW or requested private condemnation at trial. Barbara Drake cannot raise this new claim for the first time on appeal. An appellate court will not review an issue, theory, argument, or claim of error not presented at the trial court level. *Lindblad v. Boeing Co.*, 108 Wn. App. 198, 207, 31 P.3d 1 (2001).

The trial court did not err when refusing a ruling on Barbara Drake's easement by necessity claim, since no such claim was before it.

### *Reserved Public Right of Way*

Barbara Drake contends that the roadways leading to the farm are reserved public rights of way. To this end, Drake challenges the trial court's finding that, "At no time has any pathway or roadway connected the Green[e] or Gibson properties to the [farm]." CP at 223. Leonard Browning also challenges this finding.

21

Substantial evidence supports this finding. Charles Amburgey testified that the road ends at the Greenes' home on lot 26. Amburgey noted that a path continued, but the path was impassible. Susan Greene, who owns lot 26, testified that the road ends at a turnaround on her property. Forest Doty testified that the road does not continue into the farm. This testimony amply supports the trial court's finding.

Others testified that Skookum Meadow Drive continues through to the farm, either as a road or deer path, but this court defers to the trial court's determinations of credibility. In light of that deference, Barbara Drake's challenge of the court's finding fails.

To support her argument that the roads within the Skookum Creek segregation are reserved public rights of way, Barbara Drake points to the Greenes' chain of title—specifically, "Reservation by Grantors, their heirs, and/or assigns, of a 60 foot easement for unimpeded access over prior and existing roads for ingress and egress to adjoining property." CP at 399. Drake argues that "existing roads" within the meaning of the title, includes Skookum Meadow Drive and "adjoining property" refers to the farm. But nothing in this easement indicates Skookum Meadow Drive is or ever was a public road. Given the trial court's finding that Skookum Meadow Drive stops on the Greenes' property, "adjoining property" logically refers to the Gibsons' and Dotys' lots.

Barbara Drake also points to the 1972 Skookum Creek Declaration of Protective Covenants and Easements. That declaration provides:

22

> Seller does hereby declare and reserve sixty (60) foot wide non-exclusive, private easement for ingress, egress, and utilities over and across the Real Property, said easements to be located as shown on the attached Schedule B. Centerline of each of said easements shall follow the centerline of each existing or proposed road as located on the attached Schedule B.

CP at 70. Drake argues the declaration's reference to "existing roads" refers to preexisting county roads and thus the declaration reserves the public's right to use them. But by its very terms, the declaration reserves a "private" easement. CP at 70. A county engineer testified that Skookum Meadow Drive is a private road. The declaration provides those living in the Skookum Creek segregation the authority "to dedicate all or any part of any of the above-described easement to public use at any time." CP at 71. Browning and Drake presented no evidence of a dedication.

The trial court did not fail to recognize a reserved public right of way because Skookum Meadow Drive is a private road.

*Leonard Browning's Challenge to the Trial Court's Findings*

Leonard Browning assigns error to ten of the trial court's findings of fact. Leonard Browning first contends that the trial court erred by *not* finding that he is leasing-to-own lot 21, in addition to the farm. Browning similarly challenges the trial court's finding 1.12, that Forest Doty installed a gate in 1991 or 1992, without the court adding that Doty installed a second gate in 1998. There is evidence of these additional facts. But Browning does not explain how the lack of such findings impacts this case.

23

Factual issues not necessary to resolve the case need not be decided by the trial court. *Daughtry v. Jet Aeration Co.*, 91 Wn.2d 704, 707, 592 P.2d 631 (1979); *Ferguson v. Jeanes*, 27 Wn. App. 558, 564 n.2, 619 P.2d 369 (1980).

Leonard Browning challenges findings 1.8, 1.11, 1.13, and 1.18, which address Article C, section 1 of the Skookum Creek Declaration of Protective Covenants and Easements. These challenges echo Barbara Drake's contention that the declaration preserves roads leading to the farm as public rights of way. As discussed above, the declaration does not create a public right of way.

Leonard Browning challenges finding 1.15 on the ground that it inaccurately describes lot 21 as intersecting with Water Tower Lane. Finding 1.15 does not describe lot 21 and Water Tower Lane as intersecting. Finding 1.15 reads:

> Plaintiff Drake's predecessor in interest was also an owner of Lot 21 and provided easement access for the farm property to Lot 21. Such access has since been extended along the north thirty (30) feet of Lot 21 to its intersection with Water Tower Lane. The extension of the road to Water Tower Lane was not allowed for nor did it grant use to plaintiff Drake for the use of Water Tower Lane, nor any other roadway within the Skookum Creek Declaration.

CP at 224. The finding correctly notes that "access" has been extended from the starting point of lot 21's northern border to the ending point of Water Tower Lane.

*Leonard Browning's Challenges for Timber Trespass*

Leonard Browning contends the trial court erred when it concluded that the removed trees were from the Dotys' property; established the boundary between the

Dotys' lot 22 and the farm when that issue was not before the court; concluded that Browning intentionally removed trees from the Dotys' property when he had probable cause to believe Drake owned the land; and concluded that Browning intentionally removed trees from the Dotys' property despite his right to repair the fence, which includes the removal of trees.

Chapter 64.12 RCW governs timber trespass. Under RCW 64.12.030,

> Whenever any person shall cut down, girdle, or otherwise injure, or carry off any tree, including a Christmas tree as defined in RCW 76.48.020, timber, or shrub on the land of another person, or on the street or highway in front of any person's house, city or town lot, or cultivated grounds, or on the commons or public grounds of any city or town, or on the street or highway in front thereof, without lawful authority, in an action by the person, city, or town against the person committing the trespasses or any of them, any judgment for the plaintiff shall be for treble the amount of damages claimed or assessed.

(amended in 2009 to include Christmas trees; LAW OF 2009, ch. 349). RCW 64.12.040, in turn, reads:

> If upon trial of such action it shall appear that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which such trespass was committed was his or her own, or that of the person in whose service or by whose direction the act was done, or that such tree or timber was taken from uninclosed woodlands, for the purpose of repairing any public highway or bridge upon the land or adjoining it, judgment shall only be given for single damages.

RCW 64.12.030's "treble damage remedy is available when the trespass is 'willful,' because if the trespass is 'casual or involuntary' or based on a mistaken belief of ownership of the land, treble damages are not available. As befits a penal statute, our

25

decisions have interpreted this punitive damages provision narrowly." *Birchler v. Castello Land Co., Inc.*, 133 Wn.2d 106, 110, 942 P.2d 968 (1997) (internal citations omitted). "At the same time, our cases have been cognizant of the purpose of RCW 64.12.030: to punish trespassers, to prevent careless or intentional removal of trees and vegetation from property, and to roughly compensate landowners for their losses." *Birchler*, 133 Wn.2d at 111. To these ends, property owners even have an interest in the trees that lie on the border, which is "proportionate to the percentage of [the trees'] trunks growing on [the owner's] property." *Happy Bunch, LLC v. Grandview N., LLC*, 142 Wn. App. 81, 93, 173 P.3d 959 (2007). The burden is on the trespasser to "allege and prove mitigation under RCW 64.12.040." *Happy Bunch*, 142 Wn. App. at 95; *see, e.g., Seattle-First Nat'l Bank v. Brommers*, 89 Wn.2d 190, 197-98, 570 P.2d 1035 (1977).

Leonard Browning claims that substantial evidence does not support the court's finding that the trees he removed were from the Dotys' property. To this end, Leonard Browning challenges the trial court's finding 1.19, which reads:

> On or between 2005 and 2006, plaintiff Browning removed forty-seven (47) trees from the Doty property. The removal of the trees was done intentionally, without lawful authority, without probable cause to believe the property belonged to him, and without the permission of the Dotys. The reasonable value of the trees is $16,450.

CP at 225.

Arborist Tim Kastning testified to the location of various possible dividing lines. According to Kastning, from west to east, there is the "new survey line," then the "old

26

barbed wire fence," and then the "new fence." RP at 640. Kastning further testified that he inventoried only those trees that had been removed from the Dotys' side of the old barbed wire fence.

Otherwise, Kastning found 75 trees had been removed from the Dotys' property. Replacing those trees, Kastning testified, would require the planting of 47 trees at a cost of $16,450. Substantial evidence supports this finding.

Leonard Browning next contends the trial court unilaterally amended the pleadings without providing proper notice when it decided where the boundary is between the farm and the Dotys' lot 22. This argument ignores the Dotys counterclaim, in which they expressly asked the court to authorize them "to reinstall the fence as per the survey obtained by these defendants and that judgment be entered against the plaintiff for the amount necessary to replace the fence removed by the plaintiff." CP at 106. Further, the court could not properly decide the issue of timber trespass without determining the border between the farm and the Dotys lot 22. The trial court did not err by addressing the Dotys' counterclaim.

Leonard Browning also claims he "had probable cause to believe that the land on which such trespass was committed" belonged to Barbara Drake or, in the alternative, that his trespass was "casual or involuntary." RCW 64.12.040. To this end, Browning writes, "Not only Browning, but all parties, as well as all of the witnesses who testified in relation to the old fence line, believed that the old fence line was the boundary line

27

between the properties." Br. of Appellant Browning at 47-48. But again, even accepting this as true, Tim Kastning only surveyed trees east of that boundary and found 75 trees had been removed. The evidence shows that Browning removed trees even from what he considered to be the Dotys' property. This argument necessarily fails.

Finally, Leonard Browning asks whether he has "the right to repair and maintain the old fence line without being accused of trespassing?" Br. of Appellant Browning at 38. Browning argues that his repairing the fence shows that he acted in good faith, without intentionally trespassing. Browning asserts a right to repair the fence, which includes removing trees, without citations to any legal authority. This argument thus fails to satisfy RAP 10.3(a)(6), which requires parties provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." "Unsubstantiated assignments of error are deemed abandoned." *Kittitas County v. Kittitas County Conservation*, 176 Wn. App. 38, 54, 308 P.3d 745 (2013).

Substantial evidence supports the court's finding that Leonard Browning intentionally removed trees from the Dotys' property, and those findings support the court's conclusion that Browning did so in violation of RCW 64.12.030.

*Leonard Browning Alleges Ex Parte Communications*

Last, Leonard Browning contends the trial court denied him a fair trial by communicating ex parte with attorneys for other parties. Browning's one paragraph

28

accusation does not cite legal authority and otherwise cites only his own motion for reconsideration. This argument does not satisfy RAP 10.3(a)(6), and is thus abandoned.

## CONCLUSION

We affirm the judgment and the trial court rulings.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____    _____
Korsmo, J.                                      Siddoway, C.J.